IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


 



No. 10-02-00125-CV

 

Tom Sonnichsen,

                                                                      Appellant

 v.

 

Baylor University,

                                                                      Appellee

 

 

 



From the 170th District Court

McLennan County, Texas

Trial Court # 97-4212-4

 



Dissenting Opinion



 








            The evidence presented by Sonnichsen for his
damages is of precisely the same damages that he sought to recover for breach
of contract.  We rejected his breach of
contract claim because it did not comply with the statute of frauds.  Sonnichsen
v. Baylor Univ., 47 S.W.3d 122 (Tex. App.—Waco 2001, no pet.).  Sonnichsen has failed to show any difference
between the damages sought and recoverable under the rejected contract claim and
those sought and recoverable under his fraud claim.  Because we have rejected the cause of action
under which he could recover these damages as the benefit of his bargain
damages, he cannot now recover them as fraud damages.  See
Haase v. Glazner, 62 S.W.3d 795, 799
(Tex. 2001).  The
Court errs in holding otherwise.

          Several
(5) years after this case was filed, and on the eve of a second summary
judgment hearing, Sonnichsen filed an amended pleading alleging a new theory
for a breach of a completely different contract than ever previously
alleged.  The trial court did not abuse
its discretion by effectively striking the new allegations by granting Baylor’s
special exceptions.  Further, I join no
part of the Court’s discussion as to why the trial court abused its discretion
or that this newly raised contract claim would relate back to the time of
filing the original breach of contract claim.

          For
the foregoing reasons, the trial court’s judgment should be affirmed.  Because the Court does not affirm the trial
court’s judgment, I respectfully dissent.

 

 

 

                                                                   TOM
GRAY

                                                                   Chief
Justice

 

Dissenting
opinion delivered and filed August 25, 2004






ing
opinion). 
***
In short, it is more in keeping with our status as a court, and particularly with our
status as a court in a federal system, to avoid imposing a single solution on the States
from the top down. We should, and do, evaluate state procedures one at a time, as they
come before us, see Murray, supra, at 14, 109 S.Ct. 2765, while leaving "the more
challenging task of crafting appropriate procedures ... to the laboratory of the States in
the first instance." Cruzan v. Director, Mo. Dept. of Health, 497 U.S. 261, 292, 110
S.Ct. 2841, 111 L.Ed.2d 224 (1990) (O'CONNOR, J., concurring) (citation and internal
quotation marks omitted). We will not cavalierly "imped[e] the States' ability to serve
as laboratories for testing solutions to novel legal problems." Arizona v. Evans, 514
U.S. 1, 24, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995)(GINSBURG, J., dissenting). 
Accordingly, we hold that the Anders procedure is merely one method of satisfying the
requirements of the Constitution for indigent criminal appeals. States may--and, we are
confident, will--craft procedures that, in terms of policy, are superior to, or at least as
good as, that in Anders. The Constitution erects no barrier to their doing so.

Smith, 120 S.Ct. at 757-759. 
      In Smith, the United States Supreme Court validated a procedure that would allow the issues
identified by the court to be briefed by the same counsel that had filed a Wende brief,
notwithstanding that the filing of a Wende brief implied a determination by counsel that the appeal
was frivolous. Id. at 753 (citing People v. Wende, 25 Cal. 436, 441-442, 600 P2d 1071, 1074-1075, 158 Cal. Rptr. 839 (1979)).
      The Wende procedure was adopted by the California Supreme Court to deal with the situation
in appeals by indigent criminal defendants when appointed counsel had determined that the appeal
was frivolous. The United States Supreme Court, while validating the procedure, recognized the
dilemma in which counsel was placed between zealously representing the client and the duty to
not file frivolous appeals taking up precious judicial resources. 
      In this case I likewise recognize the waste of taxpayer funds by sending this case back to the
trial court with an instruction that new counsel must be appointed. The taxpayers of Brazoria
County have already paid for an attorney to review the trial court proceeding and evaluate the
merits of an appeal. That is the attorney that can most efficiently file a brief on the issues
identified by this Court. We should not require the taxpayers to pay yet another attorney to do
all the work necessary to again review the entire case when there is no constitutional or statutory
prohibition preventing the original appointed appellate attorney from doing the additional briefing.
      As noted by the majority we have determined that we do not have the authority to grant
counsel’s motion to withdraw. Enriquez v. State, 999 S.W.2d 906, 908 (Tex. App.—Waco 1999,
order, no pet.). We have applied this holding in the context of Anders. Sowels v. State, 45
S.W.3d 690, 692 (Tex. App.—Waco 2001, no pet. h.). After a number of cases holding to the
same effect, the First Court of Appeals reversed themselves and reverted to utilizing the rule from
Stafford. Stephens v. State, 35 S.W.3d 770, 771 (Tex. App.—Houston [1st Dist.] 2000, no pet.)
(overruling Guzman v. State, 23 S.W.3d 381 (Tex. App.—Houston [1st Dist.] 1999, no pet.)). 
If the majority is right that Stafford is the constitutionally required procedure, notwithstanding
Stafford’s reliance on the interpretation of Anders that the United States Supreme Court has told
us is improper, then the majority errs in holding that we do not have the authority to grant
counsel’s motion to withdraw because that is what the Court of Criminal Appeals told us to do in
Stafford. See also Wilson v. State, 40 S.W.3d 192 (Tex. App.—Texarkana 2001, no pet.).
      Finally, a word about the holding of this case. When the discussion regarding the “challenge”
to the voluntariness of the confession and the making of an open plea is analyzed closely, a careful
reader will note that an Anders brief is improper because an attorney or the client can always make
voluntariness an issue of arguable merit. This is untenable. These issues must be analyzed in light
of the appellate record. If the appellate record does not contain some indication that the confession
or plea may have been involuntary, the appeal of these issues is frivolous. In this case, the
majority is not relying on the appellate record to “identify” an arguable issue, as the reviewing
lawyer is required to do. Rather, the majority relies on the comments in the defendant’s pro se
brief or response. These comments are outside the appellate record. They may ultimately provide
grounds for an attack on the judgment by habeas corpus, but not by direct appeal.
      The real losers as a result of the process we apply today include not only the taxpayers of
Brazoria County that must fund yet another review of this entire case, but every citizen of Texas. 
This resolution not only delays the ultimate disposition of this case, but it also consumes judicial
resources that could be devoted to the disposition of cases that have merit. Having reviewed the
entire record in this case and finding no issue of arguable merit, I would affirm the conviction. 
As an alternative, I would set aside the submission of this case and order appellate counsel to
evaluate the entire record and prepare another brief for this Court in light of the modified Helms
rule. Because the majority does not, I respectfully dissent.
 
                                                                   TOM GRAY
                                                                   Justice

Opinion dissenting from abatement order delivered and filed August 8, 2001
Publish